IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| HULETT GUILL, JR., individually and | ) | |
| on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | Case No.: 3:16-cv-00424 |
| v. | ) | |
| | ) | |
| ALLIANCE RESOURCE PARTNERS, L.P., | ) | |
| HAMILTON COUNTY COAL, LLC, and | ) | |
| DOE DEFENDANTS 1-20, | ) | |
| Defendants. | ) | |

## REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS[1]

Defendants, Alliance Resource Partners, L.P. ("Alliance") and Hamilton County Coal,

LLC ("Hamilton Coal"), by counsel, in support of their Motion to Dismiss, state as follows:

After Hamilton Coal served employees with a Temporary Layoff Notice on February 5,

2016, and before the expiration of the temporary layoff period, Plaintiff filed this putative class

action under the WARN Act, 29 U.S.C. § 2101 *et seq*. Defendants moved for dismissal pursuant

to Fed. R. Civ. P. 12(b)(6) because the Complaint fails to demonstrate an "employment loss" as

required to state a claim under the WARN Act. Plaintiff's response argues there was a "mass

layoff" under § 2101(a)(3). R. 27, p. 3. Despite Plaintiff's arguments, the Complaint should be

dismissed because he fails to allege that 33% of Hamilton Coal employees experienced either (1)

a "permanent cessation" of the employment relationship as required to meet the legal definition

of "employment termination", or (2) a layoff exceeding six months. Furthermore, Plaintiff's

request to amend his Complaint, which is set forth in the Conclusion of his Memorandum, to

cure such deficiency should be denied as futile. Since 90 employees either returned to their jobs

within six months or voluntarily declined to do so, Plaintiff cannot establish that at least 33% of

Hamilton Coal employees experienced an employment loss under the WARN Act.

---

[1] Defendants' Reply brief is submitted pursuant to this Court's June 28, 2016 Order, which provides Defendants may file a reply brief on or before August 29, 2016. R. 22.

**A.    Plaintiff's Memorandum Misquotes the Definition of "Mass Layoff."**

To state a WARN Act claim based on an alleged "mass layoff," the Complaint must demonstrate an employment loss by at least 33% "*and*" at least 50 of Hamilton Coal employees.[2] *Alter v. SCM Office Supplies*, 906 F. Supp. 1243, 1247 (N.D. Ind. 1995) ("mass layoff" means either "50 to 499 full-time employees, if the number laid off equals 33% of the work force" or "500 full-time employees.") In his Memorandum, Plaintiff's definition of "mass layoff" replaces the word "and" in subsection (3)(B)(i) with the word "or", lowering the threshold Plaintiff must allege in order to adequately plead a "mass layoff." R. 27, p. 3.

The Complaint fails to allege that at least 33% of Hamilton Coal employees experienced a "permanent cessation" of the employment relationship. It also fails to allege that at least 33% of the employees were laid off for longer than six months. Accordingly, the Plaintiff cannot demonstrate the existence of a mass layoff and the Complaint should be dismissed.

**B.    The Complaint Does Not Allege "Permanent Cessation" of the Employment Relationship.**[3]

Plaintiff concedes that "termination" under § 2101(a)(6)(A) means a "permanent cessation of the employment relationship." R. 27, p. 3. Plaintiff argues, however, that the Temporary Layoff Notice resulted in a "permanent cessation" of the employment relationship based on: (1) a break in employment; (2) alleged contemporaneous communications; and (3) interruption in wages and benefits. These claims are insufficient to sustain Plaintiff's Complaint.

---

[2] The relevant portion of the statutory definition is set forth below:

  (**3**) the term "mass layoff" means a reduction in force which—…

    (**B**) results in an employment loss at the single site of employment during any 30-day period for--

      (**i**)  (I) at least 33 percent of the employees (excluding any part-time employees); *and*

        (II) at least 50 employees (excluding any part-time employees); or

      (**ii**) at least 500 employees (excluding any part-time employees);

§2101(a)(3) (emphasis added) (A copy of §2101 attached as **Exhibit 1**).

[3] In his Memorandum, and by failing to allege otherwise, Plaintiff effectively admits that he did not allege a "permanent cessation" of the employment relationship in his Complaint. R. 27, p. 3.

Page 3 of Plaintiff's Memorandum incorrectly suggests that "a break in employment" determines whether there was a "permanent cessation" of the employment relationship. Every layoff involves a break in employment, and could therefore create an "employment loss" under Plaintiff's logic. The WARN Act explicitly guards against such interpretation by limiting its coverage to layoffs or "breaks" which exceed six months. § 2101(a)(6)(B). *Martin v. AMR Services Corp.*, 877 F. Supp. 108, 112 (E.D.N.Y. 1995) ("Layoffs do not constitute an 'employment loss' unless they exceed six months' duration.") In *Martin*, the employer eliminated a department and employees were later transferred to new jobs under a reduction-in-force policy. The plaintiffs argued that they were terminated instead of laid off, and therefore, they suffered an "employment loss" under the WARN Act. Despite certain "indicia" of termination, the district court found no employment loss occurred. *Id.* at 115-116. Nowhere in its opinion did the court state that a break in employment supports a finding that there has been a "permanent cessation" of the employment relationship.[4] Similarly, no other case cited by Plaintiff supports the argument that the Temporary Layoff Notice[5] issued to Hamilton Coal employees constitutes a "permanent cessation" of the employment relationship.[6]

Plaintiff relies on communications alleged to have been made contemporaneous with the Temporary Layoff Notice to argue that employees experienced a permanent cessation of the

---

[4] The court simply noted that the absence of a break in employment weighed against the plaintiffs' argument.

[5] Not a single case cited by Plaintiff provides authority for the proposition that an employer's notice of a *temporary* layoff constitutes a termination under § 2101(a)(6)(A).

[6] Plaintiff cites *Moore v. Warehouse Club*, 992 F.2d 27 (3rd Cir. 1993). In that case, the court held that part-time employees and employees who had worked for the employer for less than 6 months could not be counted in the calculation to determine whether the requisite 50 employees had suffered an employment loss. Plaintiff also cites *Phason v. Meridian Rail Corp.*, 479 F.3d 527 (7th Cir. 2007), which involved a dispute over the date on which an employment loss occurred where the employer (Meridian) shut down the company on December 31 and then, on January 8, transferred ownership to a new company (Nortrak) who re-hired certain employees. Meridian argued that the shutdown did not result in an employment loss since it transferred ownership soon after the shutdown. Judge Easterbrook disagreed, holding that the plant shutdown on December 31 resulted in a termination of the employees since the new employer did not obtain ownership of the company immediately. In other words, there was a permanent cessation of the employment relationship between the employees and Meridian on the date of the shutdown. *Id.* at 529. Unlike the present case, *Phason* did not involve a situation where the employer announced a temporary layoff and operations continued during the layoff of some employees.

employment relationship. R. 27, pp. 4-5. The only relevance of such alleged communications would be their impact on the *expectations* of the employees regarding whether the layoff would be temporary or permanent. It is well established that "it is the actuality of the termination which controls and not the expectations of the employees." *Rifkin v. McDonnell Douglas Corp.*, 78 F.3d 1277, 1282 (8th Cir. 1992); *Nelson v. Formed Fiber Techs., Inc.*, 856 F. Supp.2d 235, 240-241 (D. Me. 2012); *Smith v. Consol. Coal Co.*, 948 F. Supp. 583, 585-586 (W.D. Va. 1996).

Finally, the fact that employees experienced an interruption in wages and benefits during the Temporary Layoff Period does not constitute a "permanent cessation" of the employment relationship. *See, e.g.*, *Nelson*, 856 F. Supp.2d at 238 (wherein plaintiff applied for unemployment benefits during temporary layoff). The Plaintiff does not cite any authority which holds that interruption in wages and benefits converts a temporary layoff into an employment termination under § 2101(a)(6)(A).[7]

C.      **Plaintiff's Request for Leave to Amend Should Be Denied As Futile.**

Plaintiff requests alternatively in the Conclusion of his Memorandum that he be granted leave to amend the Complaint to cure any deficiency. The Court should deny Plaintiff's request as futile since less than 33% of Hamilton Coal's workforce has experienced a layoff exceeding six months. The day before the temporary layoff, Hamilton Coal employed 363 employees. (Affidavit of Ezra French ¶ 4, **Exhibit 2**).[8] Of the 182 who were placed on a temporary layoff on February 6, 2016, 90 returned to work within six months of the temporary layoff or have

---

[7] Plaintiff attempts to distinguish cases cited by Defendants by pointing to language where courts have declined to find an employment loss when employees continued to receive pay and benefits. *Morton v. Vanderbilt Univ.*, 809 F.3d 294 (6th Cir. 2016); *Long v. Dunlop Sports Grp. Ams., Inc.*, 506 F.3d 299 (4th Cir. 2007). Nothing in either of those cases suggests that the interruption of pay and benefits which occurs during a temporary layoff means there has been a termination of employment.

[8] Although the District Court will not consider matters outside the pleadings in a 12(b)(6) motion, there is no rule which prevents this Court from considering Mr. French's affidavit in considering whether or not to grant Plaintiff's request to tender an amended Complaint. In this regard, Plaintiff's assertion that employees were required to complete a new application form and undergo interviews before returning to their jobs is not supported by the record and, in fact, is incorrect.

voluntarily declined to return to work. *Id.* at 6-8. The remaining 92 employees on temporary layoff do not constitute 33% of Hamilton Coal's workforce. An amendment is futile if an amended complaint would not survive a motion to dismiss. *Wilson v. American Trans. Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989); *Smith v. Chrysler Corp.*, 938 F. Supp. 1406, 1414 (S.D. Ill. 1996). Since Plaintiff cannot establish that at least 33% of Hamilton Coal employees suffered an employment loss as a result of the temporary layoff, his WARN Act claims cannot survive. *See, e.g., Brunson v. Bronco Wine Co.*, 1993 U.S. Dist. LEXIS 2135, *5 (N.D. Cal. Feb. 22, (1993).

## CONCLUSION

For the foregoing reasons, and reasons set forth in Defendants' Memorandum and Supplement, Defendants respectfully request this Court to dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

*/s/ Kif H. Skidmore*
Richard G. Griffith (Ky. Bar. #27355)
Elizabeth S. Muyskens (Ky. Bar #92639)
Kif H. Skidmore (Ky. Bar # 89525)
Stoll Keenon Ogden PLLC
300 West Vine Street - Suite 2100
Lexington, KY 40507-1801
Telephone: (859) 231-3000
Fax: (859) 253-1093
Email: richard.griffith@skofirm.com
        elizabeth.muyskens@skofirm.com
        kif.skidmore@skofirm.com
COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was electronically filed with the United States District Court, Southern District of Illinois, via the Court's CM/ECF filing system, which will send notification of such filing to counsel of record, on August 29th, 2016.

*/s/ Kif H. Skidmore*
COUNSEL FOR DEFENDANTS